IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TINA HOLLIDAY, et al., | ) | CV NO 05-00194 DAE-LEK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| EXTEX, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | | |
| TIMOTHY HOLLIDAY, et al., | ) | CV NO 05-00299 DAE-LEK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| EXTEX, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| MARLETTE THOMAS, etc., et al., | ) | CV NO 05-00319 DAE-LEK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| K&S HELICOPTERS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

<u>ORDER DENYING IN PART AND GRANTING IN PART ROLLS ROYCE/ALLISON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

The Court heard the Rolls Royce/Allison Defendants' Motion on June 5, 2006.  Terry O'Reilly, Esq., appeared at the hearing on behalf of the Holliday Plaintiffs; Daniel Stephenson, Esq., appeared at the hearing on behalf of the Rolls Royce/Allison Defendants.  After reviewing the Motion and the supporting and opposing memoranda, the Court DENIES IN PART AND GRANTS IN PART the Rolls Royce/Allison Defendants' Motion for Summary Judgment.

<u>BACKGROUND</u>

The instant dispute arises from a helicopter crash that occurred on June 15, 2003, in Volcanoes National Park on the Big Island of Hawaii.  The crash was caused in part by the in-flight failure of an engine part known as a compressor splined adapter ("CSA").  The helicopter departed from Hilo International Airport at approximately 9:15 a.m. and traveled over Hawaii Volcanoes National Park.

Within 30 minutes after departure, the pilot radioed a "mayday" call to other aircraft as a result of an in-flight engine failure he was experiencing.  Other aircraft in the area not only heard the mayday call over common area traffic frequency, but also could hear the engine out audible alarm in the background coming from the helicopter.  The helicopter crashed onto the lava fields on the

Pulama Pali in Volcanoes National Park, and an intense post-crash fire erupted. All three passengers and the pilot were killed.

The Holliday Plaintiffs' complaint asserts that the helicopter was equipped with a single Allison 250-C20B turboshaft engine, which was designed, developed, and manufactured by the Rolls-Royce/Allison Defendants. The 250-C20 engine as designed in the 1960's had a gas producer to compressor rotor shafting system consisting of several parts, including a CSA, an impeller, and a spur adapter gearshaft ("SAG"). The CSA is located between the impeller and the SAG. The Holliday Plaintiffs allege that both the impeller and the SAG contributed to the in-flight fracture of the CSA in the accident engine.

By way of background, in 1993 the Rolls Royce/Allison Defendants reengineered the 250-C20 engine, calling the old design "Pre-93" and the new design "Baseline." The Baseline design shortened the stub shaft of the Pre-93 impeller, changed the fit between the CSA and the impeller to an interference fit, lengthened the CSA and reconfigured the SAG. To facilitate the change from Pre-93 to the Baseline design, the Rolls Royce/Allison Defendants issued Commercial Engine Bulletin 1325 ("CEB 1325") on December 31, 1993. CEB 1325 set forth that the changes from Pre-93 to the Baseline design were to be complied with no

later than the next overhaul when the compressor impeller was replaced or earlier as a repair, following parts availability.

The accident helicopter was manufactured and first sold by the MDHI Defendants prior to October 1983.  The engine assembly was originally manufactured and sold by the Rolls-Royce/Allison Defendants in February 1984.  The engine was purchased by the K&S Defendants in July of 1988 and was overhauled in 2000, as part of the Baseline design discussed above.  During the overhaul, the CSA was replaced with a new one manufactured and sold by the Extex Defendants.  At the same time the CSA was replaced, the impeller was modified.  Specifically, the stub shaft of the impeller was shortened to fit the new CSA.  In 2002, a new SAG was installed.[1]

Between 1993 and 2005, the Baseline design experienced eight in-flight failures where the CSA cracked as a result of fretting.  An investigation of each accident revealed relative motion between the CSA and the impeller stub shaft, which caused fretting to occur on the pilot surface of the CSA.  In 2001, the Rolls Royce/Allison Defendants started a CSA improvement project to address the failures that occurred.  On August 19, 2005, the Rolls Royce/Allison Defendants

---

[1]The Rolls Royce/Allison Defendants do not dispute that they developed, designed and produced the impeller and the SAG found in the accident engine.

issued a technical data report ("TDR") titled "Program Summary for Model 250 Compressor Impeller/Splined Adapter Red Top Investigation." The TDR contained the program summary for the Model 250 Compressor Splined Adapter investigation in response to a number of Red Top Accident Investigations[2].

Plaintiffs filed suit in the District of Hawaii on May 12, 2005; federal jurisdiction is premised upon diversity of the parties. The First Amended Complaint was filed on June 9, 2005. At the Rule 16 Conference held on August 22, 2005, a scheduling order was issued setting the deadline for filing dispositive motions as June 7, 2006, and the discovery cut-off date at September 8, 2006.

On August 22, 2005, the Rolls Royce/Allison Defendants filed a Motion to Dismiss. Plaintiffs filed their memorandum in opposition on October 6, 2005. On October 13, 2005, the Rolls Royce/Allison Defendants filed a reply in support of their Motion. At the hearing on October 24, 2005, this Court denied Defendants' Motion to Dismiss.

Following an appropriate period of discovery the Rolls Royce/Allison Defendants' filed the instant Motion for Summary Judgment on April 18, 2006.

---

[2]The Rolls Royce/Allison Defendants open a Red Top Investigation when a safety of flight concern is raised.

The Holliday Plaintiffs filed their memorandum in opposition on May 19, 2006,

and on May 25, 2006, the Rolls Royce/Allison Defendants filed their Reply.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure requires summary

judgment to be granted when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v.

Cal. Depot of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc.,

198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to

dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett,

477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  A moving party without the ultimate burden of persuasion at trial, usually,

but not always, the defendant has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court "those portions of the

6

materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and  may not rely on the mere allegations in the pleadings.  Porter, 383 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

I.   Statute of Repose

The General Aviation Revitalization Act ("GARA") was enacted in response to Congress' concern about the heavy burden of product liability costs imposed by our tort system upon manufacturers of general aviation aircraft. See H.R.Rep. No. 103-525, pt. I, at 1-4 (1994), reprinted in 1994 U.S.C.C.A.N. 1638, 1638-41. "[Congress] believed that manufacturers were being driven to the wall because, among other things, of the long tail of liability attached to those aircraft, which could be used for decades after they were first manufactured and sold."

8

Lyon v. Agusta S.P.A., 252 F.3d 1078, 1084 (9th Cir. 2001).  Thus, GARA was

enacted, and provides as follows:

> Except as provided in subsection (b), no civil action for damages
> for death or injury to persons or damage to property arising out of an
> accident involving a general aviation aircraft may be brought against the
> manufacturer of the aircraft or the manufacturer of any new component,
> system, subassembly, or other part of the aircraft, in its capacity as a
> manufacturer if the accident occurred --
> (1) after the applicable limitation period [18 years] beginning on --
> (A) the date of delivery of the aircraft to its first purchaser or lessee, if
> delivered directly from the manufacturer; or
> (B) the date of first delivery of the aircraft to a person engaged in the
> business of selling or leasing such aircraft....

GARA § 2(a)(1).  The Ninth Circuit has described this legislation as "a classic

statute of repose."  Lyon, 252 F.3d at 1084 (citing Caldwell v. Enstrom Helicopter

Corp., 230 F.3d 1155, 1156 (9th Cir. 2000)).

However, GARA is said to contain a "rolling" statute of repose, in that

the 18-year period begins anew if the death, injury, or damage is caused by any

"new component, system, subassembly, or other part which replaced another

component, system, subassembly, or other part originally in, or which was added

to, the aircraft." Caldwell v. Enstrom Helicopter Corp., 230 F.3d 1155, 1156 (9th

Cir. 2000).

The Rolls Royce/Allison Defendants argue that neither the impeller

nor the SAG contributed to or caused the accident at issue.  They further argue that

even if the impeller contributed to the cause of the accident, it is protected under the GARA statute of repose.[3]  The Holliday Plaintiffs counter argue, however, that the Baseline design constitutes a "system" and is not protected under GARA because the Baseline design replaced the Pre-93 design in 2000 thereby invoking the rolling provision of the statute.  The Holliday Plaintiffs further argue that even if the replacement of the Pre-93 design with the Baseline design did not invoke the rolling provision of GARA, the impeller is not protected under GARA because it underwent a substantive alteration in 2000.  Finally, the Holliday Plaintiffs argue that the accident helicopter's operating manual was a "part" of the helicopter under GARA and that the Rolls Royce/Allison Defendant substantively revised the operating manual through CEB 1325, which triggered the rolling provision of GARA.

A.   Baseline Design

As set forth above, under the GARA rolling provision the 18-year limitation period starts anew if the death, injury, or damage is caused by any "*new* component, system, subassembly, or other part which *replaced* another component,

---

[3]The parties agree that the SAG in the accident engine is not protected under GARA because it was a replacement part installed in 2002, which invoked the rolling provision of GARA.

system, subassembly, or other part originally in, or which was added to, the aircraft." Id. (emphasis added).

Here, the Holliday Plaintiffs argue that the impeller, CSA and SAG together constitutes a "system" such that when the Baseline design replaced the Pre-93 design in the accident engine, the rolling provision of GARA was triggered. The Holliday Plaintiffs' argument is misplaced. The language of the statute including "component, system, subassembly, or other part" is not accompanied by any modifier or reference to "design" thereby indicating that "replacement" means replacement of a physical item, "i.e., a piece of hardware, and not a new intangible concept or design." Hiser v Bell Helicopter Textron, Inc., 111 Cal. App. 4th 640, 4 Cal. Rptr. 3d 249 (2003). This Court agrees with the rationale in Hiser and finds that a new design in and of itself does not trigger the rolling provision under GARA. Accordingly, when the baseline design replaced the Pre-93 design it did not start the limitation period anew.

B.     Impeller

The Rolls Royce/Allison Defendants argue that the rolling provision of the statute does not apply here because the impeller was not replaced with a new part, but rather was modified in 2000. The Rolls Royce/Allison Defendants further argue that the language of the statute controls and that the language of the

11

statute, strictly construed, requires actual replacement of a part rather than a modification to begin the 18-year period anew.

The Holliday Plaintiffs counter argue that in <u>Caldwell</u>, the Ninth Circuit interpreted the statute in such a manner that a substantive alteration to a component, system, subassembly, or other part that is alleged to have caused death, injury or damage will begin the limitation period anew.  The Holliday Plaintiffs contend that the impeller in the accident engine caused the CSA to fail and that the modification to the impeller in 2000, wherein the stub shaft of the impeller was shortened, constituted a substantive alteration thereby starting the 18-year period anew.

In <u>Caldwell</u>, plaintiffs sued defendant helicopter manufacturer for wrongful death, personal injury, and property damage, alleging negligence and strict liability after a fatal crash.  Plaintiffs contended that the helicopter's flight manual was defective in that it did not include a warning that the last two gallons of gasoline in the fuel tanks would not burn.  The District Court dismissed the action holding that a revised flight manual was not a system or other part of an aircraft that triggered the rolling provision of GARA.  On appeal, the Ninth Circuit held that a flight manual is a "part" of an aircraft rather than a separate product. The Court further opined that "if defendants substantively altered, or deleted, a

12

warning about the fuel system from the manual within the last 18 years, and it is alleged that the revision or omission is the proximate cause of the accident, then GARA does not bar the action." <u>Id.</u>, at 1158.

The Rolls Royce/Allison Defendants argue that the <u>Caldwell</u> decision is inapplicable to the matter at bar.  Specifically, the Rolls Royce/Allison Defendants contend that comparison between hard parts (e.g. the impeller) and manuals are difficult to make.  This Court agrees.  This Court interprets the Ninth Circuit's ruling in <u>Caldwell</u> to be limited to the specific facts of that case wherein the issue before the Court was whether, under GARA, a flight manual was a "part" of an aircraft or a separate product.  Here, the issue is whether a modification to a hard part invokes the rolling provision of GARA.  Unlike a hard part, a manual cannot be changed without issuing a new writing whether it be a new page or new book.  In that sense, a "revised" manual requires a "new" part.  In the matter at bar, however, the alteration to the impeller in 2000 did not replace the original part with a new part. Had Congress intended otherwise, it could have specifically said so in the statute.

The language of the statute is clear that the limitation period starts anew on "on the date of completion of the replacement" of a "component, system, subassembly, or other part" with a new "component, system, subassembly, or other

13

part."  The parameters of the GARA "new part" exception have been set and supported by other jurisdictions.

In <u>Hiser</u>, the widow of a helicopter pilot brought action for wrongful death against the helicopter manufacturer, on theories of strict products liability, breach of warranty and negligence.  Plaintiff argued that the crash was caused by a defective fuel system.  The Superior Court entered judgment in favor of the widow and the manufacturer appealed.  On appeal defendant argued that plaintiff's action was time barred by GARA.  Specifically, defendant argued that plaintiff focused her proof on parts of the fuel system which were aspects of the original design protected by GARA and which were not replaced.  Plaintiff argued that the rolling provision of GARA was invoked with respect to all parts of the fuel system when the original design of the fuel system was replaced with a newly designed system. The California Court of Appeals rejected plaintiff's interpretation of GARA.  In reaching its decision, the Court interpreted the plain language of the statute and found that "'replace' means to put something new in the place of" and that the "rolling statute of repose applies only with respect to a new item that replaces an original item ..."  <u>Id.</u> at 650.  The Court held that "modification of an item, whether it is a component, system, subassembly, or other part, does not restart the limitation period under GARA."  <u>Id.</u>  The Court reasoned that "had Congress wished to draft

14

GARA to cover the circumstances urged by plaintiff, it could easily have written

the rolling statute of repose to commence anew whenever a component, system,

subassembly or other part is replaced or *modified* ...”  Id. (emphasis added).

In the instant matter, the impeller in the accident engine, which the

Holliday Plaintiffs allege contributed to the cause of the CSA fracture, was never

replaced.  Rather, the original impeller was modified in 2000, when the stub shaft

was shortened to accommodate the design of the new CSA.  The case law is clear

that a modification to an original part does not invoke the rolling provision of

GARA.  Thus, the impeller is protected by GARA and no liability can be imposed

upon the Rolls Royce/Allison Defendants for the impeller.

C.     Overhaul Manual

As stated above, Caldwell involved a helicopter crash due to lack of

fuel.  Plaintiffs alleged that the flight manual was defective in that it did not

include a warning that the last two gallons of gasoline in the fuel tanks would not

burn.  Plaintiff alleged no defect in the fuel system itself.  The Ninth Circuit held

that a helicopter’s flight manual could be considered a “part” of the aircraft, such

that a substantive revision to it could trigger renewal of the GARA limitation

period.  The Ninth Circuit, however, limited its holding to situations where “it is

alleged that the revision or omission is the proximate cause of the accident."
Caldwell, at 1158.

Here, the Holliday Plaintiffs misinterpret the Caldwell decision.  The
Holliday Plaintiffs argue that the accident engine's overhaul manual is a "part" of
the helicopter under Caldwell.  The Holliday Plaintiffs further argue that the
overhaul manual was substantively revised in 1993 through CEB 1325 and again in
1999 to include the CEB 1325 mandated changes.  The Holliday Plaintiffs set forth
that the revisions to the overhaul manual in 1993 and 1999 triggered the rolling
provision of GARA.  Finally, the Holliday Plaintiffs contend that there is a triable
issue of material fact regarding whether revisions to the overhaul manual
contributed to the cause of the accident.

However, even if the overhaul manual is a "part" of the accident
helicopter and it was substantively revised through CEB 1325, the Holliday
Plaintiffs have not alleged that the manual itself failed.  Indeed, the Holliday
Plaintiffs have made no allegation and presented no facts to establish that the
revisions or omissions to the overhaul manual caused this crash, as required by the
Caldwell holding.  In addition, the Holliday Plaintiffs have set forth no evidence
that the overhaul manual required installation of the Baseline design.  As such, the

purported revisions to the overhaul manual through CEB 1325 in 1993 and later in 1999, did not trigger the rolling provision of GARA.

II.   Strict Liability/Negligence

The Rolls Royce/Allison Defendants do not dispute that they designed developed and manufactured the Allison 250-C20B turboshaft engine.  However, the Rolls Royce/Allison Defendants argue that they did not manufacture, design, sell or service the CSA found in the accident engine and cannot be found liable under a negligence theory for negligent design or under a theory of strict liability in tort for negligent design.  In addition, the Rolls Royce/Allison Defendants argue that neither the impeller nor the SAG contributed to or caused the accident at issue. As set forth above, even if the impeller contributed to the cause of the accident, it is protected under GARA.  The only remaining issue is whether a genuine issue of fact exists regarding whether the SAG contributed to the CSA fracture in the accident engine.

Here, the facts regarding the cause of the accident are in dispute.  The Rolls Royce/Allison Defendants allege that the SAG did not contribute to the CSA fracture, which in turn caused the accident engine to shut down.  Specifically, the Rolls Royce/Allison Defendants set forth that the National Transportation Safety

17

Board ("NTSB") issued a factual report following the accident, which found that the SAG was "intact and visually undamaged."

The Holliday Plaintiffs, however, cite to the TDR issued by the Rolls Royce/Allison Defendants' which sets forth that between 1999 and 2005, nine failures occurred with the Baseline design CSA's.  The TDR indicated that the most likely failure scenario is "[h]igh misalignment at the SAG to CSA spline joint applies a bending moment to the CSA that effectively tries to turn the CSA within the impeller bore ..." and "[t]he sliding motion causes fretting. ... [t]he fretting progresses in severity until the flaws reach a size large enough to initiate cracks." The TDR goes on to state "[t]his bending or turning of the CSA inside the impeller has a magnitude and direction defined by the misalignment magnitude and direction."

The Rolls Royce/Allison Defendants cannot sustain their burden at the summary judgment stage.  Evidence that the SAG was visibly intact and undamaged following the accident is insufficient to show that the SAG did not contribute to the CSA fracture.  In light of the evidence set forth in the TDR and viewing the facts in the light most favorable to the non-moving party, a genuine issue of fact remains regarding whether the SAG contributed to the cause of the accident.

Accordingly, although the Rolls Royce/Allison Defendants did not manufacture the CSA in the accident helicopter, the Holliday Plaintiffs have presented sufficient evidence to show a genuine issue of fact regarding whether the SAG contributed to the CSA fracture in the accident engine.  Thus, since the evidence is in dispute and this Court may not make credibility determinations or weigh conflicting evidence at the summary judgment stage, this Court cannot grant Defendants' Motion on this basis.  Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990).

III.    Rule 56(f)

Federal Rule of Civil Procedure 56(f) provides in part

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits  to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

F.R.C.P. 56(f).  The moving party has the burden to set forth sufficient facts to show that the evidence sought exists. Conkle v. Jeong, 73 F.3d 909, 914 (9th Cir. 1995). The moving party must demonstrate that "additional discovery would

uncover specific facts which would preclude summary judgment." Maljack Prods., Inc. v. Good Times Home Video Corp ., 81 F.3d 881, 888 (9th Cir. 1996). Denial of a Rule 56(f) application is proper where it is clear that the evidence sought is almost certain nonexistent or is the object of pure speculation. Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991).

Here, the Holliday Plaintiffs allege that the Rolls Royce/Allison Defendants have not complied with a Request for Production of Documents requesting test reports on the Baseline design.  The Holliday Plaintiffs argue that the documents are critical to their claim that the Rolls Royce/Allison Defendants knowingly concealed pertinent information such as to remove it from GARA protection.  To support their argument, the Holliday Plaintiffs cite only to the deposition testimony of Jeff Higbie, a Rolls Royce employee.  In his deposition, Mr. Higbie stated "we were not able to track down the actual reports."  Mr. Higbie further stated "I looked at the AMs that released the Baseline design.  In that AM there was reference to testing.  Beyond that, I depended upon John [Michael] to see if he could find it."

The Rolls Royce/Allison Defendants, however, present evidence to show that the testing documents at issue are sufficiently referenced in documents that have been produced, including the Advance Engineering Memorandum

20

("AEM").  Even further, in the Declaration of Douglas Sleeman, also a Rolls

Royce employee, Mr. Sleeman testified that the Rolls Royce/Allison Defendants

have conducted an extensive search for the engine test reports at issue.  Mr.

Sleeman testified that he has personally spent over 50 hours searching for the

documents.  Despite his efforts, the Rolls Royce/Allison Defendants have been

unable to locate any Baseline engine tests.  Mr. Sleeman concluded that the testing

that was done, as summarized in the AEM history file, was typical of design

assurance testing and that no formal engine test report would have been written for

such a test.

This Court finds that the Holliday Plaintiffs have not set forth

sufficient facts to show that the test results they seek exist nor do they present

sufficient evidence that additional discovery would uncover facts to preclude

summary judgment.  Instead, the Holliday Plaintiffs have relied exclusively on the

deposition testimony of one Rolls Royce/Allison employee who testified that he in

fact searched for the alleged engine test reports, but could not locate any.  Thus,

this Court DENIES the Holliday Plaintiffs' request for a continuance to conduct

further discovery.

CONCLUSION

For the reasons stated above, the Court DENIES IN PART AND

GRANTS IN PART the Rolls Royce/Allison Defendants' Motion for Summary

Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 14, 2006.



_____
David Alan Ezra
United States District Judge

Tina Holliday, et al. vs. Extex, et al., Cv. No. 05-00194 DAE-LEK, Timothy
Holliday, et al. vs. Extex, et al., Cv. No. 05-00299 DAE-LEK, Marlette Thomas,
etc., et al. vs. K&S Helicopters, Inc., et al., Cv. No. 05-00319 DAE-LEK; ORDER
DENYING IN PART AND GRANTING IN PART ROLLS ROYCE/ALLISON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT